IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF One (1) Samsung Galaxy model #J727T1, assigned phone number (901)513-0103, belonging to Kisha Jackson (**Subject Device**), which is currently in ATF possession. | Case No. 19-SW-341 |

ATTACHMENT C

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Daniel J. Bowling, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic device—which is currently in law enforcement possession, and the extraction from the devices of electronically stored information described in **Attachment A**, which is attached hereto and incorporated by reference as if fully set forth herein.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), a part of the United States Department of Justice. I have been employed with the ATF since July of 2015. Prior to working for the ATF, I was employed as a police officer with the Metropolitan Nashville Police Department from February of 2008 to June of 2015 with approximately 6 years of that being in an investigative capacity.

3. Throughout my training as a Special Agent with the ATF, I was trained to conduct physical surveillance, interview sources of information and defendants, serve and review telephone subpoenas, serve search warrants and arrest warrants, investigate firearms and narcotics

trafficking, National Firearms Act (NFA) violations, Hobbs Act violations, undercover firearms and narcotic investigations, and the interception of wire communications. Further, I have been trained to testify in judicial proceedings in federal court involving prosecutions relating to violations of federal firearms laws, as well as, federal narcotics law. I routinely refer to and utilize these laws and regulations during the course of my official duties. I have been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substance and of the laundering and concealing of proceeds from drug trafficking in violation of Title 18, U.S.C. § 1956. I have received training in investigations involving transporting and distributing controlled substances. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to their methods of importing and distributing controlled substances, their use of telephones, and their use of numerical codes and code words to conduct their transactions. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. §2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. §2516.

      4.      In connection with my official duties, I have participated in investigations under, but not limited to, Title 21 of the United States Code sections 841, 846, and 848 as well as Title 18 of the United States Code sections 922g, 924c and 1851 offenses. I have received special training in enforcement of laws concerning controlled substances. I also have been involved in various types of electronic surveillance, debriefing of defendants, witnesses, informants, and others whom have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking violations of Title 18, United States Code Section 1956.

5. I have conducted numerous analyses of telephone-billing records for telephones used by narcotics traffickers and gang members. Consequently, I am familiar with the ways in which gang members, drug traffickers and others engaged in criminal activity operate their illegal enterprises, including, but not limited to, their use of cellular telephones and their use of numerical codes and code words to conduct their transactions. I know that gangs and criminal enterprises often further their activities by using multiple cellular phones, multiple insulated contacts, pre-paid cellular phones, and phones designated to be used only for incoming or outgoing calls, which is also known as compartmentalization. I know that gang members frequently use cellular telephones subscribed to them in false names. The use of telephones in this manner is designed to help avoid detection by law enforcement.

6. The information in this affidavit occurred in the Western District of Tennessee. It is based on my personal knowledge and information provided to me by other law enforcement officers and individuals. The information in this affidavit is provided for the limited purpose of establishing probable cause. The information is not a complete statement of all the facts but only the facts that are necessary to establish probable cause to believe that evidence of violation of Title 21, United States Code, Section 846 (the Target Offense) will be located in, and consist of, the items listed in **Attachment A**.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is One (1) Samsung Galaxy model #J727T1, assigned phone number (901)513-0103, which belongs to Kisha Jackson and is currently located in the ATF evidence vault.

 

8. The applied-for warrant would authorize the forensic examination of the **Subject Device** for the purpose of identifying electronically stored data more particularly described in **Attachment B**.

## PROBABLE CAUSE

9. This application is submitted in connection with a narcotics trafficking investigation conducted by the ATF Memphis Field Office. The investigation resulted in an indictment currently pending in United States District Court in the Western District of Tennessee.

10. By way of intelligence gathering, it was determined that Kisha Jackson (hereinafter "**JACKSON**"), the user of the Subject Device, was communicating with members of a drug trafficking organization operating out of Memphis, Tennessee, located in the Western District of Tennessee, prior to being found in possession of the Subject Device. The crime under indictment is, among others, conspiracy to possess and distribute controlled substances, in violation of 21 U.S.C. § 846 (hereinafter "specified unlawful activities").

11. During this investigation, Jarvis COOPER (hereinafter COOPER) was identified as a distributor of various narcotics, to include methamphetamine and ecstasy in the Memphis, Tennessee area. Anthony JONES (hereinafter JONES) was identified as a facilitator for the

COOPER drug trafficking organization (DTO) in Memphis, Tennessee. **JACKSON** was identified as a mid-level ecstasy customer and ecstasy distributor in the organization. Through the review of recorded jail calls and local police databases, agents identified the user of telephone number (901) 513-0103 as **JACKSON.**

12. The subjects listed above were identified during the investigation of the Specified Unlawful Activities through physical surveillance in conjunction with wire and electronic communications over TARGET TELEPHONE 1 & 2 (described below). These techniques revealed that narcotics and/or drug proceeds were being stored at residences utilized by the DTO.

13. Based on intercepted wire and electronic communications, physical surveillance, and information gathered from other agencies and databases, investigators gained a detailed understanding of the DTO. The investigation showed that **JACKSON**, among others, was engaged in the distribution of methamphetamine and ecstasy in the Western District of Tennessee, in or about the months of June to September of 2017. The investigation showed that **JACKSON** was utilizing the residence located at 3035 Ashwood St, Memphis, Tennessee 38118 to store narcotics, documents, and proceeds from the sale of narcotics.

14. The Honorable United States District Judge Sheryl H. Lipman authorized the monitoring of wire and electronic interceptions over TARGET TELEPHONE #1 and TARGET TELEPHONE #2 utilized by COOPER on July 18, 2017 and interception began on July 19, 2017. Interception ended as to TARGET TELEPHONES #1 and #2 on August 18, 2017. The following are details of several intercepted conversations:

15. On July 20, 2017, at approximately 04:34 PM, **JACKSON**, utilizing telephone number (901) 513-0103 placed an outgoing call to JONES on TARGET TELEPHONE #2.

JONES was using TARGET TELEPHONE #2 to facilitate narcotics transactions for COOPER while COOPER was out of town. (Session 60)

>JONES: Hello
>
>JACKSON: Yeah, what's up?   I need a whole thing. Bring it to me.
>
>JONES: This 'Squirt G', this 'Squirt G'.
>
>JACKSON: I know, I know who it is.   Jarvis told me to call the other number.
>
>JONES: Yeah, how many of them do you need?
>
>JACKSON: A whole one, a whole one.
>
>JONES: Ok, say no more.   Where you at?
>
>JACKSON: At my house.   You don't know where I stay at?
>
>JONES: Yeah.   Right (IA) off of Getwell.
>
>JACKSON: Yeah.   Come on, how long is it going to take you?
>
>JONES: Uh, about thirty minutes. No more than twenty or twenty five minutes.
>
>JACKSON: Come on, come on, come on.
>
>JONES: All right.

16. In this conversation, SA's believed that **JACKSON** is asking JONES for one hundred ecstasy pills. Based on my training and experience and my knowledge of this investigation, when individuals ask for a "whole one" they are referring to a bag of one hundred ecstasy pills. **JACKSON** informs JONES to come to her house and affirms that it is "off of" Getwell Rd. Agents know that the address of 3035 Ashwood St, Memphis, Tennessee 38118 is around the corner from the intersection of Getwell Rd and Knight Arnold Rd. Shortly after this conversation, Agents observed JONES arrive at 3035 Ashwood St, Memphis, Tennessee 38118 and pull into the driveway. An unidentified male black came to JONES' vehicle, and after approximately one minute exited JONES' vehicle and walked back inside the residence. Agents believe that the unidentified male was completing the narcotics transaction for **JACKSON** and then after purchasing the narcotics from JONES, took the narcotics inside 3035 Ashwood St, Memphis, Tennessee 38118.

17. On July 22, 2017, at approximately 01:58 PM, an unidentified male (UM0103), utilizing telephone number (901) 513-0103, the telephone number of **JACKSON**, made an outgoing call to JONES, utilizing TARGET TELEPHONE #2. (Session 157)

JONES: Hello

UM0103: What it do my guy?

JONES: What's (IA) love?

UM0103: Man, nothing. We trying to get one of them over at Kisha's house.

JONES: You trying to get one of them thangs?

UM0103: Yeah.

JONES: Ok, ok, ok ok, ok, uh, I'm fixing to go ahead and shoot that way.

UM0103: All right.

JONES: All right.

18. In this conversation, SA's believe UM0103 is informing JONES that he is at **JACKSON's** residence of 3035 Ashwood St, Memphis, Tennessee 38118 and that they are trying to acquire another "one of them thangs" from JONES. Based on my training and experience and knowledge of this investigation, I believe that UM0103 is attempting to acquire one hundred ecstasy pills from JONES for **JACKSON** and wants JONES to bring it to **JACKSON's** residence of 3035 Ashwood St, Memphis, Tennessee 38118. Shortly after this conversation, surveillance units observed JONES arrive at 3035 Ashwood St, Memphis, Tennessee 38118, walk inside the location for approximately 3 minutes and then exit the residence. Agents believe that JONES arrived at the location, walked into the residence of 3035 Ashwood St, Memphis, Tennessee 38118 and sold **JACKSON** and the UM0103 the ecstasy pills that were previously ordered.

19. Based on the above information, ATF applied a search warrant for 3035 Ashwood, Memphis, Tennessee, 38118. The affidavit attachment of the application included a request for a search warrant for the premises and the residences at 3035 Ashwood, as well as a request to search for and seize numerous items as described in Attachment "B." The items listed included computers, computerized records, and storage media. "Attachment B" stated that some of the items to be seized may be stored on computer and/or electronic equipment, and that such

electronic equipment may include telephones. The affidavit also sought permission to remove and conduct an off-site search of such computer and storage media from their location.

20. The warrant was signed by the Honorable Tu M. Pham, Magistrate Judge for the Western District of Tennessee, on September 8, 2017, and numbered 17-SW-195. ATF executed this warrant at 3035 Ashwood, Memphis, Tennessee, 38118, on September 11, 2017. Members of the Shelby County Sheriff's Department assisted ATF in executing the warrant. **JACKSON** was at the residence during the execution of the warrant.

21. During the search of 3035 Ashwood, your affiant located a cellular device. As part of the investigation, your affiant placed a call to the target telephone number (901) 513-0103. As explained above, your affiant believed this number to belong to **JACKSON**, based on the previously recorded calls. Upon dialing the number, agents observed the cellular device ring. This ringing verified that **JACKSON** was the user of this device.

22. Several months after the execution of the search warrant, **JACKSON**, COOPER, JONES, and several other defendants were indicted by a grand jury in the Western District of Tennessee for conspiracy to distribute methamphetamine and other charges. This indictment is numbered 18-CR-20005, and is pending before United States District Judge Sheryl H. Lipman. **JACKSON** is currently set for trial on December 16, 2019.

23. The Subject Device is currently in storage at ATF's evidence locker at 2600 Thousand Oaks Boulevard, Memphis, Tennessee 38118, and has been stored in this location since on or about September 11, 2017. In my training and experience, I know that the Subject Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it as when the Subject Device first came into the possession of the ATF.

**TECHNICAL TERMS**

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most

digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

        to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

25.    Based on my training, experience, and research, I know that the Subject Device has capabilities that allow it to serve as a wireless, telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27.  *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Device to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Device described in Attachment A to seek the items described in Attachment B.

31. In consideration of the foregoing, your Affiant respectfully requests that this Court issue a search warrant for the search of the following Device: One (1) Samsung Galaxy phone, model #J727T1, assigned phone number (901) 513-0103, belonging to Kisha **JACKSON** (Subject

Device) currently located in the ATF evidence vault, being more specifically described in **Attachment A** which is incorporated by reference as if fully set forth herein, authorizing the search for, and seizure of, the items described in **Attachment B** herein.

Respectfully submitted,

_____
Daniel J. Bowling
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me
on September 9, 2019:

_____
**CHARMIANE G. CLAXTON**
**UNITED STATES MAGISTRATE JUDGE**
**WESTERN DISTRICT OF TENNESSEE**